UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Billie Joe Wilson,

Plaintiff,

v.

United States of America,

Defendant.

Civ. File No. 00-2637 (PAM/RLE)

**MEMORANDUM AND ORDER FOR JUDGMENT**

---

This matter was tried to the Court during the week of May 13, 2002. Plaintiff Billie Joe Wilson claims that he suffered severe injuries related to a left knee surgery performed on February 10, 1994. The Court heard three days of testimony, read and viewed the record in this case, and considered the opening and closing arguments of counsel. For the reasons that follow, the Court determines that Mr. Wilson has failed to show the medical care that he received from the Department of Veterans Affairs, VA Medical Center, Minneapolis ("VA Hospital") fell below the applicable standard of medical care. Accordingly, the Court rules in favor of Defendant.

**BACKGROUND**

Mr. Wilson has experienced a tumultuous recent medical history. Since 1990, he has had a series of knee surgeries, a history of diet-controlled diabetes, a history of poor circulation, and a history of venous stasis ulcers. This case arises out of a left knee arthoplasty ("LKA") completed on February 10, 1994.

FILED MAY 2 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 2 8 2002
DEPUTY CLERK

In preparation for the LKA, Mr. Wilson was admitted to the VA Hospital for a preoperative examination on January 31, 1994. Because Mr. Wilson had previously undergone a right knee arthoplasty, the attending doctor at the preoperative examination conducted a right knee aspiration to determine if any infection was present. The results of this test showed no infection but did show some evidence that the knee was being overused. According to Defendant's expert, Dr. Lance Peterson, this finding would be consistent with the fact that Mr. Wilson was favoring his right leg because of the difficulty that he was having with his left knee.

Mr. Wilson was next examined by the dentistry department at the VA Hospital. As a prophylactic measure, the dentistry department determined that Mr. Wilson should have his teeth removed because of possible infection. Accordingly, on February 1, 1994, Mr. Wilson's teeth were removed and Mr. Wilson was given amoxicillin to reduce the potential for infection.

On February 2, 1994, Mr. Wilson was examined to determine the status of any ulcerations. Despite Mr. Wilson's testimony that ulcers on his legs would open and close periodically and his testimony that, prior to his surgery, he had a large open "wound" on his right leg, on February 2, only two pin-point epidermal ulcers were present on Mr. Wilson's right lower extremity. These areas were covered with a duoderm patch.

On February 9, 1994, Mr. Wilson was readmitted for surgery on the following day. At this time, he was reexamined and the duoderm patch covering the two pin-point epidermal ulcers was changed. Mr. Wilson was also fully advised of possible complications

that might arise from his surgery, including the risk of infection, and he gave his full consent for the LKA.

Following the surgery, on February 11 and 12, Mr. Wilson's temperature rose slightly and he began taking antibiotics. On February 13, 1994, there were no open wounds on Mr. Wilson's right lower extremity. By February 14 or 15, however, doctors noted a fluid build-up in his right ankle. This fluid was checked and indicated the presence of serratia bacteria. Mr. Wilson was given an aggressive course of antibiotic treatments, and, on February 17, 1994, the infected right ankle area was opened and debrided. Throughout these procedures, his left knee remained clear of infection.

On March 7, 1994, Mr. Wilson was discharged from the hospital with weekly return visits scheduled. Mr. Wilson alleges that he suffered considerable pain in his lower extremities for many months after his LKA and that it was very difficult for him to perform his required physical therapy. He further complains that because the VA Hospital did not assign a trained nurse or therapist to visit him at his home on a daily basis, he did not have adequate supervision to ensure that he was completing his physical therapy properly. Because of a build-up of scar tissue, Mr. Wilson had to undergo a second knee operation on his left leg in November 1994.

## DISCUSSION

The parties do not dispute the applicable legal standards. In order to prevail on his claims, Mr. Wilson must show that: (1) the doctors and staff of the VA Hospital failed to meet the required standards of due care under the circumstances; (2) Mr. Wilson suffered

an injury that was caused by this failure; and (3) any injuries suffered by Mr. Wilson resulted in damages. Silver v. Redleaf, 194 N.W.2d 271, 272 (Minn. 1972). In general, the standard of care applicable to physicians is that of a reasonable physician possessing the skill and learning of the average member of the medical community in good standing. Manion v. Tweedy, 100 N.W.2d 124, 129 (Minn. 1959).

At trial, Mr. Wilson essentially argued that he should be allowed to recover from the VA Hospital on two distinct grounds. First, he argued that the hospital failed to adequately take into account the risks related to the LKA in light of the fact that he claims to have had an open wound on his right lower extremity and given his history of diabetes and poor circulation. Second, he argued that the hospital failed to provide him with adequate post-operative physical therapy supervision. He presented the expert testimony of Dr. William R. Scott to establish that the VA Hospital violated the required standards of care by failing to culture the open wound properly, by operating prematurely, and by failing to provide adequate post-operative physical therapy assistance.

On cross-examination, however, Dr. Scott admitted that the hospital records indicated that there were only two pin-point ulcers on Mr. Wilson's right lower extremity prior to Mr. Wilson's surgery and that three days after surgery, there were no open wounds on Mr. Wilson's lower extremities. According to Dr. Scott, if there were no open wounds three days after the surgery, there could have been no wounds open during the surgery, because they could not have healed that quickly. If there were no open wounds, Dr. Scott admitted that there was little that could have been cultured. Although Dr. Scott implied that the

surface area of the skin could have been scraped and cultures run on that skin, he could point to no support for the proposition that such conduct was required of a reasonably competent physician in this medical community. In light of Dr. Scott's cross-examination, and Dr. Peterson's testimony that it is inappropriate to culture patients preoperatively for elective orthopedic surgery when there is no clinical evidence of infection, especially if the patient's skin is intact, the Court finds that the VA Hospital did not violate any standard of care by failing to culture the skin around Mr. Wilson's former pin-point ulcerations on his right lower extremity.

In the absence of any open wounds and any evidence of infection, Dr. Scott could provide no specific justification for his belief that allowing Mr. Wilson to undergo an elective knee surgery violated any applicable standard of care. Indeed, on cross-examination, Dr. Scott conceded that without evidence of infection or an open wound, it was likely acceptable to continue with surgery. The Court finds that this is particularly true under the circumstances of this case. While there is evidence that any surgery on Mr. Wilson would be potentially dangerous given his fragile condition, there is also evidence that Mr. Wilson was overusing his right leg and thereby putting excessive pressure on his right knee. Considering that Mr. Wilson was suffering from pain in his left knee, his right knee was being overworked, and there is ample evidence that Mr. Wilson was fully informed of the risks associated with the elective LKA, the Court finds that continuing with surgery in this case was reasonable under the circumstances. As Dr. Peterson pointed out, in light of all of the precautionary measures taken, including the preoperative examinations, the

removal of Mr. Wilson's teeth, and the aspiration of Mr. Wilson's right knee prior to surgery on his left knee, there was no apparent reason to delay the LKA.

Finally, although Dr. Scott opined that Mr. Wilson did not receive adequate physical therapy supervision in his home, Dr. Scott could point to no support for his opinion that providing in-home assistance is a required practice to satisfy the standard of care for reasonable physicians in this community. When pressed on cross-examination, Dr. Scott admitted that the medical record indicates that Mr. Wilson was trained on how to use in-home physical therapy machines, Mr. Wilson was scheduled for weekly physical therapy sessions at the hospital, and Mr. Wilson voluntarily traveled to St. Cloud for additional physical therapy sessions. Given these admissions, and Mr. Wilson and his wife's own admissions that they were fully trained on how to do the required physical therapy exercises, the Court declines to find that in-home physical therapy assistance is a necessary component to the post-operative care of all knee surgery patients. Health care practitioners are not required to provide the optimal level of care in all circumstances. They are only required to provide a reasonable level of care that conforms to the medical community's standards. In this case, Mr. Wilson was provided with instruction and continuing physical therapy assistance. Accordingly, the VA Hospital did not breach the applicable standard of care by failing to provide in-home physical therapy assistance to Mr. Wilson.

In short, Mr. Wilson has not provided competent evidence to establish a standard of care in this medical community and has not offered sufficient evidence to show that any physicians or staff at the VA Hospital departed from that standard of care in treating Mr.

Wilson. See Swanson v. Chatterson, 160 N.W.2d 662, 666 (Minn. 1968) (stating that plaintiffs must offer competent evidence to establish the recognized standard of care and that a medical practitioner departed from that standard). Without such evidence, Mr. Wilson cannot succeed on his malpractice claims.

Even assuming, however, that Mr. Wilson had established a standard of care and shown that physicians and staff at the VA Hospital breached that standard, Mr. Wilson did little more at trial than ask the Court to infer from the fact that Mr. Wilson has suffered some generalized injury that the VA Hospital must be responsible. He has provided nothing but conjecture and speculation to show that it is more likely than not that his injuries were caused by any negligence. See Leubner v. Sterner, 493 N.W.2d 119, 121 (Minn. 1992) (stating that in order to establish a prima facie case of medical malpractice, a plaintiff must prove that it is more probable than not that his or her injury was the result of the medical provider's negligence). In the absence of supporting evidence connecting Mr. Wilson's alleged injuries to the purported negligence of the physicians and staff of the VA Hospital, Mr. Wilson's malpractice claims fail.

After considering all of the evidence presented at the bench trial in this matter, the Court concludes that the VA Hospital did not breach any applicable standard of medical care in operating on or otherwise treating Mr. Wilson. Therefore, for the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court finds against Mr. Wilson on his malpractice claims.

Accordingly, **IT IS HEREBY ORDERED** that judgment be entered in favor of Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 28, 2002

Paul A. Magnuson
United States District Court Judge

MAY 2 8 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

**June 19, 2002**
**8:00 am—5:15 pm**

**Minneapolis Convention Center**
**1301 Second Avenue South**
**Room 208**
**Minneapolis, MN 55402**
**(612) 335-6000**

**The Minnesota Chapter of the Federal Bar Association**

c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minnespolis, MN
Permit No. 2657

**Application Pending for 7.5 CLE Credits including**
**2 Ethics and 1 Bias Credit**

*Featured Speakers Include:*

<u>District of Minnesota</u>

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

<u>United States Bankruptcy Court</u>
<u>District of Minnesota</u>

Judge Robert J. Kressel

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office);*** **Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00

☐ Non-Member $225.00

Name ____________________

Firm/Employer ____________________

Address ____________________

____________________

____________________

Phone ____________________

E-Mail ____________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building